UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARTIN BLEIWAS,

                         Plaintiff,

            - against -

CITY OF NEW YORK, LEON LIAN,
ALFREDO TORRES, GEORGE GOMEZ,
MIRIAM LORENZO, DENNIS BOWMAN,
CHRISTOPHER KENNIS, ESTHER BUENO,
CARL LAI, WOJCIECH LIPINSKY, PIERRE
BARBEE, JOHN HAND, and JOHN and JANE
DOE 1 through 10,

                         Defendants.

**OPINION AND ORDER**

15 Civ. 10046 (ER)

---

Ramos, D.J.:

        Plaintiff Martin Bleiwas brings this action pursuant to 42 U.S.C. § 1983 against the City

of New York, and individual Defendants Leon Lian, Alfredo Torres, George Gomez, Miriam

Lorenzo, Dennis Bowman, Christopher Kennis, Esther Bueno, Carl Lai, Wojciech Lipinsky,

Pierre Barbee, and John Hand (together "Defendants"), claiming, among other things, false

arrest, malicious prosecution, denial of right to a fair trial, and failure to intervene.

        Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the reasons stated below, Defendants' motion is GRANTED in part and

DENIED in part.

## I.  __Background__[1]

Between March 13, 2015 and March 19, 2015, Sergeant Leon Lian of the Internal Affairs Bureau ("IAB") of the New York Police Department ("NYPD") purchased a radio with NYPD insignia from Plaintiff.  Declaration of E. Fudim in Support ("Fudim Decl.") Ex. B ("Criminal Complaint"), Doc. 60–2.  Plaintiff, who is a retired New York City Corrections Officer and a former 911 EMS dispatcher for the City, claims that he was lawfully selling decommissioned NYPD radios on eBay.  Amended Complaint ¶¶ 6, 30.  Sergeant Lian provided the serial number of the radio he purchased from Plaintiff to Lieutenant John Hand and Pierre Barbee, a NYPD radio technician supervisor, who informed Sergeant Lian that NYPD decommissioned radios were mechanically destroyed and that Plaintiff did not have permission or authority to possess them.  *Id.* at ¶ 30.  Based on that information, Sergeant Lian obtained a search warrant for Plaintiff's home and garage.  Fudim Decl. Ex. A ("Search Warrant"), Doc. 60-1.

At approximately 6:00 am on April 9, 2015, Sergeants Lian and George Gomez, Deputy Inspector Miriam Lorenzo, Lieutenants Dennis Bowman and Christopher Keenis, and Detectives Alfredo Torres, Esther Bueno, Carl Lai, and Wojciech Lipinski (the "Officer Defendants") executed the search warrant at Plaintiff's home.  *Id.* at ¶¶ 16, 17.  While the Officer Defendants conducted the search, Plaintiff was detained in the living room by Deputy Inspector Lorenzo.  *Id.* at ¶ 18.

---

[1] The following facts are drawn from allegations contained in the Amended Complaint, Doc. 23, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Defendants have also submitted declarations in related state court proceedings, *see* Docs. 60 & 71, of which the Court may take judicial notice, because they are documents filed in court.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)  ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

As a result of the search, the Officer Defendants retrieved and confiscated over 230 portable radios, which Plaintiff claims had been decommissioned and relinquished by the NYPD approximately twenty-one years prior. *Id.* at ¶ 19. They also confiscated Plaintiff's duly licensed and lawfully possessed firearms and removed his personal computer, cellphone, storage drives, and camera. *Id.* at ¶¶ 20–21.

Plaintiff alleges that, during the search, he repeatedly informed the Officer Defendants that the radios had been sold by the City at an auction that was open to the public and that he had lawfully purchased the radios from the original purchaser thereafter. *Id.* at ¶ 19. He also told them that he had receipts to show lawful ownership. Plaintiff claims that the Officer Defendants ignored his statements and instead arrested him for criminal possession of stolen property. *Id.* at ¶ 23. After the arrest, Detective Torres took Plaintiff to the 1st Precinct, where he remained until he was issued a desk appearance ticket by Sergeant Lian and released at 2:00 pm. *Id.* at ¶ 25.

On June 1, 2015, Plaintiff appeared in New York County Criminal Court, where he was arraigned. *Id.* at ¶ 27. He returned to court on June 24, 2015 and again on September 9, 2015, on which date the charges against him were dropped and sealed. *Id.* at ¶ 31. Plaintiff alleges that Sergeant Lian obtained the search warrant under false pretenses because he, Lieutenant Hand, and Barbee had no basis to believe the radios had been stolen. *Id.* at ¶ 29.

As a consequence of the arrest, Plaintiff's New York State armed security license, Nassau County Police Department carry permit, and New York City Police Department carry permit were suspended. *Id.* at ¶ 36.

## II.  Procedural History

Plaintiff filed the instant action on December 24, 2015.  Doc. 1.  On April 5, 2016, Defendants filed a letter with the Court requesting a pre-motion conference to seek leave to file a motion to dismiss.  Doc. 14.  On May 18, 2016, the Court granted Defendants' request for leave to file the motion, which Defendants timely filed on June 13, 2016.  Doc. 21.  On May 19, 2016, the Court adopted the parties' proposed discovery plan and scheduling order, which, among other things, directed Plaintiff to file any amendments to the Complaint by July 11, 2016.  Doc. 20.  Pursuant to the Discovery Order, Plaintiff timely filed an Amended Complaint.  Doc. 23. Upon review of the parties' submissions, the Court found that the Amended Complaint mooted Defendants' original motion to dismiss and granted Defendants leave to file a subsequent motion to address the additional allegations made by Plaintiff in the Amended Complaint.  Doc. 47. Defendants timely filed the instant motion on September 9, 2016.  Doc. 59.

## III.  Legal Standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## IV. <u>Discussion</u>

In order to state a claim under Section 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under Section 1983 will stand only insofar as a plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

### A. <u>False Arrest</u>

Defendants argue that Plaintiff's federal and state false arrest claims should be dismissed because there was probable cause, or arguable probable cause, to arrest him. Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Defs. Memo") (Doc 61) at 5. False arrest claims brought under Section 1983 are "substantially the same as claims for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). "To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Here, Defendants do not contest that Plaintiff properly alleged the first three elements of his false arrest claim. Thus, the only disputed element is whether the Officer Defendants had probable cause to arrest Plaintiff. If the Officer Defendants had probable cause to arrest Plaintiff, then the confinement is privileged and constitutes a complete defense to a federal and state false arrest claim. *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996)); *see also Simpson v. City of New York*, 793 F.3d 259 (2d Cir. 2015) (holding that to avoid liability for a claim of false arrest, an arresting officer may demonstrate that he had probable cause for the arrest).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The test is "objective rather than subjective." *Id.* at 154. Additionally, "[w]hen making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted). "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Id.* (internal quotation marks omitted); *accord United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or

imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."). Therefore, "[t]he determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." *Panetta*, 460 F.3d at 395 (internal quotation marks and alterations omitted).

Defendants argue that the collective knowledge rule applies and that Plaintiff's false arrest claims should be dismissed because Sergeant Lian reasonably relied on Lieutenant Hand's and Barbee's statements that Plaintiff's possession of the radios was unlawful. Defs. Memo at 6. Defendants further claim that the remaining Officer Defendants are entitled to qualified immunity because reasonable officers could have believed that there was probable cause to arrest Plaintiff. *Id.* at 7. Defendants, in their reply, appear to concede that the claims should not be dismissed against Sergeant Lian, Lieutenant Hand, and Barbee. Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Defs. Reply") (Doc. 72) at 1–3 ("The allegations against the officers, other than Lian, Hand, and Barbee, do not show anything more than the possibility that they acted unlawfully, and as such the claims against these officers . . . must be dismissed."). In response, Plaintiff argues that because he repeatedly told the Officer Defendants that the radios had not been stolen and that he had receipts, it was not reasonable for them to believe that he had committed a crime. Therefore, the Officer Defendants are not entitled to qualified immunity. Memorandum of Law in Opposition ("Pl. Opp."), Doc. 70 at 10.

The Amended Complaint alleges that Plaintiff was arrested for criminal possession of stolen property pursuant to a search warrant obtained by Sergeant Lian based on the information provided by Lieutenant Hand and Barbee. Amended Complaint ¶ 30. Plaintiff asserts that Barbee "falsely and recklessly represented [to Sergeant Lian] that all decommissioned radios that were salvaged were mechanically destroyed." He also claims, without further elaboration, that Lieutenant Hand "admittedly did not know how such decommissioned radios were disposed of in 1993," at the time the radio was decommissioned and auctioned by the City. *Id.* at ¶ 30. He claims that despite not knowing how the radio was actually disposed of, Sergeant Lian, Lieutenant Hand, and Barbee concluded that Plaintiff's radio was stolen, even though no such evidence corroborating [the] reckless conclusion existed." *Id.* Taking these allegations as true— and considering Defendants' concession—the Court finds that Plaintiff has sufficiently alleged that Sergeant Lian, Lieutenant Hand, and Barbee did not have probable cause to arrest Plaintiff. Accordingly, Defendants' motion to dismiss Plaintiff's false arrest claim against Sergeant Lian, Lieutenant Hand, and Barbee is DENIED.

Additionally, because the Court finds that Plaintiff has sufficiently alleged a state false arrest claim, the City may be held liable pursuant to a theory of *respondeat superior*. *See Ackerson v. City of New York*, 702 F.3d 15, 22 (2d Cir. 2012) (holding that defendant officer's liability for false arrest claim under New York law creates liability for City under theory of *respondeat superior*); *Graham v. City of New York*, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) ("Because Plaintiff has sustained false arrest claims against the Officer Defendants and assault and battery claims against Defendant Glenn, Plaintiff's false arrest and assault and battery claims against Defendant New York City survive summary judgment."). Thus, Plaintiff's false arrest claim against the City survives as well.

However, the Court finds that the remaining Officer Defendants are entitled to qualified immunity. First, without specifying who arrested him, Plaintiff alleges that Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski arrested Plaintiff upon executing the search warrant obtained by Sergeant Lian and finding decommissioned radio containing NYPD insignia. These officers were entitled to rely on the search warrant and Sergeant Lian's direction. *See Anthony v. City of New York,* 339 F.3d 129, 138 (2d Cir. 2002) (noting that "[p]lausible instructions from a superior or fellow officer support qualified immunity, where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g. a warrant, probable cause, exigent circumstances)" (internal quotation marks omitted)); *see also Loria v. Gorman,* 306 F.3d 1271, 1288 (2d Cir. 2002) (stating that "[a]bsent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest [is] lawful" (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).

Second, although Plaintiff claims that it was unreasonable for the Officer Defendants to arrest him after he repeatedly told them that the radios were lawfully possessed, this claim is insufficient to overcome Defendants' qualified immunity defense. The Officer Defendants were under no obligation to investigate Plaintiff's claims of innocence before arresting him. *See generally Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *see also Salvador v. City of New York*, No. 15 Civ. 5164 (DLC), 2016 WL 2939166, at *6 (S.D.N.Y. May 19, 2016) (finding that officers acted reasonably in arresting plaintiff upon execution of search

warrant and discovery of pills despite not further investigating plaintiff's claims that they were lawfully his).

The Court is unpersuaded by Plaintiff's reliance on *Sanders v. City of New York*, No. 12 Civ. 113 (PKC) (LB), 2015 WL 1469514 (E.D.N.Y. Jan. 7, 2015) *report and recommendation adopted*, No. 12 Civ. 113 (PKC) (LB), 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015). In *Sanders*, before the plaintiff—who was 6'6'' tall—was arrested for allegedly committing a robbery, the arresting officers viewed a video of the robbery and determined that the robbers were of average height. Nevertheless, the officers placed the plaintiff in a lineup and proceeded with his arrest and prosecution. *Sanders*, 2015 WL 1469514, at *8. The court denied the defendants' motion for summary judgment and held that they had not established as a matter of law that there was probable cause for plaintiff's arrest. *Id.* at *9. The court found that, having previously viewed the security video of the robbery, a reasonable officer would have questioned the identification of plaintiff based on the perpetrators' relative heights. *Id.* It also concluded that because the height discrepancies were evident from the security video, a reasonable juror could find that the arresting officer should have known at the time of plaintiff's arrest that he was not involved in the robbery. *Id.* at *10. Here, unlike in *Sanders*, the Officer Defendants were not in possession of any plainly exculpatory evidence prior to Plaintiff's arrest. Accordingly, Defendants' motion to dismiss Plaintiff's false arrest claim against Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is GRANTED.

## B. **Malicious Prosecution**

Plaintiff asserts both a federal and a state law claim for malicious prosecution against Defendants. As with the false arrest claim, the elements of malicious prosecution under Section

1983 are "substantially the same" as the elements under New York law." *Bailey v. City of N.Y.*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). "To establish a claim for malicious prosecution under New York law, a plaintiff must show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)). In addition to these state law elements, a plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment right[]" to be free of unreasonable seizure. *Id.* (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted)). Probable cause is a complete defense for claims of malicious prosecution, similar to claims of false arrest. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).

Defendants argue that Plaintiff's malicious prosecution claim fails because he failed to adequately plead that (1) anyone but Sergeant Lian initiated the complaint and that (2) the Officer Defendants, Hand, and Barbee were motivated by malice. Defendants also claim that there was probable cause to prosecute Plaintiff. Defs. Memo at 8–10.

As an initial matter, Defendants argue that Plaintiff's malicious prosecution claim should be dismissed against the Defendants that were not directly involved in Plaintiff's prosecution. Defs. Memo at 10. "A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint." *Fiedler v. Incandela*, No. 14 Civ. 2572 (SJF), 2016

WL 7406442, at *10 (E.D.N.Y. Dec. 6, 2016) (citing *See Llerando–Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005). An arresting police officer may also be held liable for malicious prosecution if he "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Cameron v. City of N.Y.*, 598 F.3d 50, 64 (2d Cir. 2010) (internal quotations omitted). Here, Plaintiff alleges that Sergeant Lian obtained the search warrant and signed the Criminal Complaint. He also claims that he was charged with criminal possession of stolen property based on the information provided by Lieutenant Hand and Barbee. Thus, only these three defendants may be held liable for malicious prosecution. Accordingly, Defendants' motion to dismiss Plaintiff's malicious prosecution claims against Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is GRANTED.

With respect to malice, New York law "does not require a plaintiff to prove that the defendant was motivated by spite or hatred," but rather, "that [the defendant] initiated the criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Blake v. Race*, 487 F. Supp. 2d 187, 211–12 (E.D.N.Y. 2007) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629–30 (2d Cir. 1994)). Courts may infer actual malice if probable cause for initiating the criminal proceedings is lacking. *Espada v. Schneider*, 522 F. Supp. 2d 544, 554 (S.D.N.Y. 2007) (citing *Conkey v. State*, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)) ("In most cases, the lack of probable cause—*while not dispositive*—tends to show that the accuser did not believe in the guilt of the accused, and malice *may* be inferred from the lack of probable cause." (emphasis added)).

Here, since the Court finds that Plaintiff has sufficiently alleged that probable cause did not exist for his arrest, the Court can infer malice. *See Cruz v. City of New York*, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at *6 (S.D.N.Y. July 27, 2010) (denying defendants' motion to dismiss plaintiff's malicious prosecution claim because plaintiff had adequately pled lack of probable cause for arrest and thus malice could be inferred). Thus, because the proceedings ended in Plaintiff's favor when the charges against him were dismissed, Defendants' motion to dismiss Plaintiff's malicious prosecution claims against Sergeant Lian, Lieutenant Hand, and Barbee is DENIED. Plaintiff's state claim against the City pursuant to a theory of *respondeat superior* also survives. *See generally L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior*.").

### C. <u>Denial of Right to Fair Trial</u>

Plaintiff alleges that the individually named Defendants violated his right to a fair trial. Amended Complaint ¶¶ 52–56. "To establish a claim of denial of the right to a fair trial, Plaintiff must plausibly plead the following elements: "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012). The Second Circuit has held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). Although some courts

have held that a Section 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted, the Second Circuit in *Ricciuti* and other courts in this district have found otherwise. *See Schiller v. City of New York*, No. 04 Civ. 10178 (RJS) (JCF), 2008 WL 200021, at \*10 (S.D.N.Y. Jan. 23, 2008) ("The limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm."); *Canario v. City of New York*, No. 05 Civ. 9343 (LBS), 2006 WL 2015651, at \*2–\*4 (S.D.N.Y. July 12, 2006). Thus, in cases where there are allegations that officers fabricated evidence, the key consideration is whether the fabrication resulted in a deprivation of liberty.

The Court finds that Plaintiff has sufficiently pled his fair trial claim, but—as Defendants concede in their reply—only against Sergeant Lian, Lieutenant Hand, and Barbee. Plaintiff alleges that Lieutenant Hand and Barbee falsely represented to Sergeant Lian that the decommissioned radios would have been disposed of. Plaintiff also claims that Sergeant Lian was aware of Hand's and Barbee's lack of basis for their representations and yet conveyed their claims and the evidence to the New York County District Attorney's Office, which initiated the legal proceeding. These allegations are sufficient to state a claim against Sergeant Lian, Lieutenant Hand, and Barbee. *See Case v. City of New York*, No. 14 Civ. 9148 (AT), 2017 WL 571530, at \*9 (S.D.N.Y. Feb. 10, 2017). Plaintiff's claim that "Defendants created false evidence" and "utilized this evidence against . . . Plaintiff in legal proceedings" is too conclusory—and not supported by Plaintiff's other allegations—to assert a fair trial claim against the remaining Officer Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's fair trial claim against only Sergeants Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is GRANTED.

### D. **Failure to Intervene**

Plaintiff asserts a claim for failure to intervene in the alleged false arrest and malicious prosecution against the individual Defendants. Amended Complaint ¶ 61–65. "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used (2) that a citizen has been unjustifiably arrested or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). However, "'[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" *Id.*

The Court finds that Plaintiff has sufficiently alleged his failure to intervene claim. In the Amended Complaint, Plaintiff alleges that the Officer Defendants were present at the time of his arrest and had some reason to believe that he was being falsely arrested. Specifically, Plaintiff claims that Sergeant Lian knew that Lieutenant Hand and Barbee did not know whether the radios had been destroyed, and thus were unlawfully possessed, and that Plaintiff repeatedly told the Officer Defendants that the radios had been lawfully purchased at a City auction. Plaintiff further alleges that Lieutenant Hand and Barbee knew that he would be prosecuted based on their representations and "without evidence linking him to criminal conduct." This is sufficient to survive a motion to dismiss. *Guerrero v. City of New York*, No. 16 Civ. 516 (JPO), 2017 WL 2271467, at *3 (S.D.N.Y. May 23, 2017) (denying defendants' motion to dismiss plaintiff's failure to intervene claim because he adequately alleged constitutional violations and officers' presence and/or involvement in conduct underlying those claims). Moreover, that Plaintiff alleges that all of the individual Defendants directly participated and also failed to intervene does not disturb this Court's analysis, as Plaintiff is entitled to plead in the alternative at this stage.

*See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 725 (S.D.N.Y. 2015) (allowing

plaintiff's false arrest and failure to intervene claims against all defendants to proceed to

summary judgment stage) (citing *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444

(E.D.N.Y. 2012) ("Where a plaintiff has properly alleged a constitutional violation, he is

'entitled to discovery to determine which officers participated directly in the alleged

constitutional violations and which officers were present and failed to intervene.'")).

Accordingly, Defendants' motion to dismiss Plaintiff's failure to intervene claim against the

individual Defendants is DENIED.

### E.  **Supervisory Liability**

Plaintiff alleges that the "Supervisory Defendants," defined as Sergeants Lian and

Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Kennis, and Hand, "personally

caused [P]laintiff's constitutional injury by being deliberately or consciously indifferent to the

rights of others in failing to properly supervise and train their subordinate employees."

Amended Complaint ¶ 67.  He further alleges that the Supervisory Defendants "directly

participated" in his arrest and "supervised and otherwise oversaw subordinate officers'

participation" in his arrest, the search of his home, and the ensuing prosecution.  *Id.* at ¶ 32.

"The rule in this Circuit is that "when monetary damages are sought under § 1983, the

general doctrine of *respondeat superior* does not suffice and a showing of some personal

responsibility of the defendant is required."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)

(internal citation omitted).  Therefore, "allegations which do not specify individual involvement

are insufficient" to state a Section 1983 claim against a state actor.  *Williams v. Young*, 769 F.

Supp. 2d 594, 601 (S.D.N.Y. 2011); *see also McCoy v. Goord*, 255 F. Supp. 2d 233, 258

(S.D.N.Y. 2003) ("It is well-settled that 'where the complaint names a defendant in the caption

but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'") (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)).

The Second Circuit has defined personal involvement in two ways: direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Garnett v. City of New York*, No. 13 Civ. 7083 (GHW), 2014 WL 3950904, at *7 (S.D.N.Y. Aug. 13, 2014) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)). If Plaintiff "establish[es] that one of the supervisory defendants created a policy or custom under which a constitutional deprivation occurred, [he] 'must also establish that the supervisor's actions were the proximate cause of the [their] constitutional deprivation.'" *Marom v. City of New York*, No. 15 Civ. 2017 (PKC), 2016 WL 916424, at *16 (S.D.N.Y. Mar. 7, 2016) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014)). Therefore, "if the constitutional deprivation at issue was not a foreseeable consequence of any alleged policy or custom, or the deprivation was caused by some unforeseeable intervening event, [Plaintiff has] not stated a plausible claim against a supervisory defendant." *Id.* (citing *Victory v. Pataki*, 814 F.3d 47, 69 (2d Cir. 2016)).

The Court finds that Plaintiff's allegations that the Supervisory Defendants failed to adequately train their subordinates are too conclusory to survive a motion to dismiss. *Scalpi v. Town of E. Fishkill*, No. 14 Civ. 2126 (KMK), 2016 WL 858955, at *8 (S.D.N.Y. Feb. 29, 2016). However, Plaintiff's claims that the Supervisory Defendants all entered and searched his home sufficiently allege that they were direct participants in the alleged constitutional violation and are thus liable under Section 1983. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 394

(S.D.N.Y. 2013).  Accordingly, Defendants' motion to dismiss Plaintiff's supervisory liability

claim against the Supervisory Defendants is DENIED.

**F.  _Monell_ Claim**

Plaintiff asserts that the City should be held liable for the actions of the Officer

Defendants because it failed to adequately "train its police officers in the proper methods of

investigation and the probable cause required to make an arrest."  Amended Complaint ¶ 37.  He

further claims that the City is aware of the NYPD's practice of falsifying evidence through

lawsuits and complaints made to the IAB and Civilian Complaint Review Board, but has yet to

take any corrective action.  _Id._ at ¶ 40.  In support of this claim, Plaintiff relies on _Colon v. City

of New York_, 2009 WL 4263362 (E.D.N.Y. 2009) in which the court found sufficient anecdotal

evidence of "repeated, widespread falsification by arresting police officers" of the NYPD "to

constitute a custom or policy by the [C]ity approving illegal conduct.  _Id._ at *2; Amended

Complaint ¶ 39–40.  Plaintiff asserts that City was aware, prior to the incident, that the Officer

Defendants "lacked the objectivity, temperament, maturity, discretion, and disposition to be

employed as police officers."  Amended Complaint ¶ 41.

"In order to establish municipal liability, 'a plaintiff must show that the violation of his

constitutional rights resulted from a municipal custom or policy.'"  _DeCarlo v. Fry_, 141 F.3d 56,

61 (2d Cir. 1998) (quoting _Ricciuti_, 941 F.2d at 122).  A municipality may not be held liable for

a Section 1983 claim solely "by application of the doctrine of _respondeat superior_."  _Pembaur v.

City of Cincinnati_, 475 U.S. 469, 478 (1986).  Rather, municipal liability is found where:  (1) "a

particular municipal action _itself_ violates federal law, or directs an employee to do so," _Bd. of

Cty. Comm'rs of Bryan Cty., Okl. v. Brown_, 520 U.S. 397, 404 (1997) (emphasis in original), (2)

an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected

18

right," *id.* at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and (4) where a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference," *Id.* Under any of these theories, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan Cty.*, 520 U.S. at 404. Here, the Amended Complaint appears to allege that the City should be held liable under the third (custom or practice) and fourth (failure to train) theories of municipal liability.

Defendants argue that Plaintiff fails to adequately plead that a widespread practice of falsifying evidence exists within the NYPD. Defs. Memo at 19. The Court agrees. Plaintiff's allegation that the City had notice of the unlawful practice is too conclusory to support his claim. Plaintiff provides no information on the number of alleged complaints or the dispositions of the lawsuits to allow the Court to plausibly conclude that a widespread practice exists. Moreover, Plaintiff's reliance on *Colon*, issued approximately eight years ago, has very little, if any, bearing on the City's practices today in 2017. *Cruz v. City of New York*, No. 15 Civ. 2265 (PAE) 2016 WL 234853, at *4 (S.D.N.Y. Jan. 19, 2016) (holding that plaintiff's citation to eight other civil rights cases with "no information about the cases . . . no description of evidence adduced in those cases," fell short of establishing a custom or a widespread practice).

Plaintiff's failure to train theory similarly fails. The Amended Complaint alleges that the City "failed to train its police officers in the proper methods of investigation and the probable cause required to make an arrest," and that officers "too often engage in falsification to justify arrests for collateral objectives outside the ends of justice, including advancement on the job

and/or to meet quotas and/or for overtime compensation." Amended Complaint ¶ 37. By themselves, these allegations are too conclusory to state a claim for *Monell* liability. *Tieman v. City of Newburgh*, No. 13 Civ. 4178 (KMK), 2015 WL 1379652, at *14 (S.D.N.Y. Mar. 26, 2015) (listing cases).

### G. Battery

Plaintiff asserts a claim for battery under New York State law against all Defendants. Amended Complaint ¶¶ 92–96. To maintain a cause of action for battery under New York law, Plaintiff must prove "bodily contact, made with intent, and offensive in nature." *Salmon v. Blesser*, 802 F.3d 249, 256-57 (2d Cir. 2015) (quoting *Bower v. Cty. of Lockport*, 115 A.D. 3d 1202, 1204 (4th Dep't 2014)); *see also Thaw v. North Shore Univ. Hosp.*, 129 A.D. 3d 937, 942-43 (2d Dep't 2015) (listing the elements of battery). "If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010) (citing *Sulkowska v. City of New York*, 129 F.Supp.2d 274, 294 (S.D.N.Y. 2001)); *see also Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 530–31 (S.D.N.Y. 2013) ("If an arrest is unlawful, an arresting police officer commits a battery when he or she touches the arrestee, including during the application of handcuffs."). Here, because the Court finds that Plaintiff has adequately stated a claim for false arrest, Plaintiff's battery claim would also survive. However, Plaintiff does not allege that he was actually handcuffed by any of the Officer Defendants during the search or while being transported to the precinct. Accordingly, Defendants' motion to dismiss Plaintiff's claim for battery is granted without prejudice.

**H.  Negligent Screening, Hiring, Retention, Training, and Supervision**

Plaintiff alleges that his injuries were caused by "carelessness, recklessness and negligence" of the City and its employees, who were "on duty and acting in the scope of their employment when they engaged in the wrongful conduct."  Amended Complaint ¶ 110.  However, New York law does not permit "a claim for negligent hiring, screening, retention, supervision, and training where defendants act within the scope of their employment."  *Edrei v. City of N.Y.*, No. 16 Civ. 1652 (RWS), 2017 WL 2367992, at *12 (S.D.N.Y. May 31, 2017) (citing *Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (collecting cases)); *see also Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324 (N.Y. App. Div. 1997) ("[I]f the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.").  Since Plaintiff alleges—and Defendants do not deny—that the individual Defendants were acting within the scope of their employment, his claim for negligent screening, hiring, retention, training, and supervision fails as a matter of law.  *Anderson v. City of N.Y.*, No. 13 Civ. 1745 (KBF), 2013 WL 6182675, at *4 (S.D.N.Y. Nov. 19, 2013) (dismissing plaintiff's negligent hiring and training claim because plaintiff alleged that the officer was employed by the City and was acting within the scope of his employment at the time of the alleged incident and arrest); *see also Rowley v. City of N.Y.*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *13 (S.D.N.Y. Sept. 30, 2005).

Additionally, to survive a motion to dismiss on this claim, Plaintiff must allege that the City knew or should have known of the officers' "propensity for the conduct which caused the injury."  *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246 (SAS), 2012 WL 987592, at *9 (S.D.N.Y. Mar. 23, 2012).  Plaintiff's allegations that the City "was aware, prior to the incident,

that the individual defendants lacked the objectivity, temperament, maturity . . . to be employed as officers" is too conclusory to pass muster. Accordingly, Defendants' motion to dismiss Plaintiff's negligent screening, hiring, retention, training, and supervision claims is GRANTED.

## I. <u>Negligence</u>

"To demonstrate that a defendant acted with negligence under New York law, a plaintiff must show '1) the existence of a duty flowing from defendant to plaintiff; 2) a breach of this duty; 3) a reasonably close causal connection between the contact and the resulting injury; and 4) actual loss, harm or damage." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir. 1997); *Phelps v. City of New York*, No. 04 Civ. 8570 (DLC), 2006 WL 1749528, *7 (S.D.N.Y. June 29, 2006) (same); *Dougherty v. O'Connor*, 926 N.Y.S.2d 635, 636 (2d Dep't 2011) (referencing the *prima facie* elements of negligence). Although Defendants do not make this argument, "New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519–20 (S.D.N.Y. 2013) (internal citations omitted); *see also Fiedler v. Incandela*, 222 F. Supp. 3d 141, 167 (E.D.N.Y. 2016) ("It is well established that 'a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution.'") (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *Maldonado v. City of N.Y.*, No. 11 Civ. 3514 (RA), 2014 WL 787814, at *12 (S.D.N.Y. Feb. 26, 2014) ("Thus, '[a] plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and imprisonment.").

Here, Plaintiff alleges that his injuries were caused by "carelessness, recklessness and negligence" of the City and its employees, who were "on duty and acting in the scope of their employment when they engaged in the wrongful conduct." Amended Complaint ¶ 110. He further claims that the individual Defendants "owed a duty" to Plaintiff which they breached when they arrested him and provided information that led to his arrest and prosecution. *Id.* at ¶ 34. Because Plaintiff "may not recover under broad general principles of negligence against law enforcement officers, his negligence claim fails as a matter of law." *Fiedler*, 222 F. Supp. 3d at 167; *see also Lopez v. City of New York*, No. 14 Civ. 1660 (PKC), 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014) ("[Plaintiff's] negligence claim is couched in terms of a breach of defendants' duty to arrest and prosecute suspects only on probable cause . . . But New York does not recognize negligence claims premised on wrongful arrest, imprisonment or prosecution."). Moreover, as Defendants note, Plaintiff alleges that all of the individual Defendants—with the exception of Barbee—acted intentionally. Thus, Plaintiff's negligence claims cannot be asserted against them.

Accordingly, Defendants' motion to dismiss Plaintiff's negligence claim is GRANTED.

## J. Violation of New York State Constitution Art. 1 § 12

Plaintiff alleges that Defendants violated Article 1 § 12 of the New York State Constitution. Article I, § 12 provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." N.Y. Const. art. I, § 12; *see also Brown v. City of New York*, 201 F. Supp. 3d 328, 332 (E.D.N.Y. 2016) ("Article I, § 12 of the New York Constitution is a verbatim adoption of the Fourth Amendment of the United States Constitution."). New York courts will "only imply a private right of action under the state constitution where no alternative remedy is available to the

plaintiff." *Anderson v. City of New York*, No. 16 Civ. 01051 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8358, at * 60 (S.D.N.Y. Jan. 19, 2017); *see also Lee v. Corneil*, No. 13 Civ. 8359, 2016 U.S. Dist. LEXIS 44660, at *15 (S.D.N.Y. Mar. 31, 2016) ("Because section 1983 provides remedies for [plaintiff]'s state constitutional claims of unreasonable search and seizure and violation of due process, he does not have a private right of action under the New York state constitution."); *Waxter v. State of New York*, 826 N.Y.S.2d 753, 754 (3d Dep't 2006) ("[A] private right of action for a violation of the N.Y. Constitution is unavailable where an alternative remedy . . . exists."). Here, Section 1983 provides a remedy for Plaintiff's false arrest claim against the individual Defendants. Thus, Plaintiff's state constitutional claim against the individual Defendants is dismissed.

Plaintiff argues that he is entitled to pursue a cause of action for violations of the New York State Constitution against the City because liability pursuant to a theory of *respondeat superior* is not available under Section 1983. Pl. Opp. at 18–19. In support, Plaintiff cites to two cases in which the court denied the defendants' dispositive motion and allowed the plaintiff to proceed with his state constitutional claims. *See Espinoza v. City of New York*, 194 F. Supp. 3d 203, 208 (E.D.N.Y. 2016) (denying defendants' motion for summary judgment on false arrest claim based on New York State Constitution because an "alternative remedy of false arrest against the City, premised upon *respondeat superior* liability, is not viable pursuant to § 1983"); *Campbell v. City of New York*, No. 09 Civ. 3306 (FB), 2011 WL 6329456, at *1 (E.D.N.Y. Dec. 15, 2011) ("Because remedies are not available under § 1983 for plaintiff's excessive force claim against the City, however, plaintiff's state constitution claims against the City are not dismissed."). Defendants argue that because Plaintiff has an alternative remedy at common law, including *respondeat superior* liability against the City for false arrest and malicious

prosecution, Plaintiff does not have a private right of action under the New York State Constitution.  Defs. Reply at 9.

The Court finds that on the facts presented, Plaintiff does not have a private right of action under the New York State Constitution because he has adequately pleaded state common law claims against the City for false arrest and malicious prosecution pursuant to a theory of *respondeat superior*.  *Bogart v. City of New York*, No. 13 Civ. 1017 (NRB), 2016 WL 4939075, at *12 (S.D.N.Y. Sept. 6, 2016) (granting defendants' motion for summary judgment on plaintiff's state constitutional claim because plaintiff showed that City may be liable under theory of *respondeat superior* for excessive force and assault and battery common law claims); *see also Biswas v. City of New York*, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) ("Actions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution."); *Lyles v. State,* 194 Misc.2d 32, 752 N.Y.S.2d 523, 526 (Ct. Cl. 2002) ("A fortiori, a monetary common law remedy, which is essentially duplicative of a constitutional tort remedy, is an adequate remedy . . . .").  Accordingly, Defendants' motion to dismiss Plaintiff's state constitutional claim is GRANTED.

## V.  Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

- Defendants' motion to dismiss Plaintiff's **state and federal false arrest** claims against Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is **GRANTED**.

- Defendants' motion to dismiss Plaintiff's **state and federal false arrest** claims against Sergeant Lian, Lieutenant Hand, and Barbee and state false arrest claim against the City is **DENIED**.

- Defendants' motion to dismiss Plaintiff's **state and federal malicious prosecution** claim against Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is **GRANTED**.

- Defendants' motion to dismiss Plaintiff's **state and federal malicious prosecution** claim against Sergeant Lian, Lieutenant Hand, and Barbee and state malicious prosecution claim against the City is **DENIED**.

- Defendants' motion to dismiss Plaintiff's **denial of a fair trial** claim against Sergeant Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Keenis, and Detectives Torres, Bueno, Lai, and Lipinski is **GRANTED**.

- Defendants' motion to dismiss Plaintiff's **denial of a fair trial** claim against Sergeant Lian, Lieutenant Hand, and Barbee is **DENIED**.

- Defendants' motion to dismiss Plaintiff's **failure to intervene** claim against the individual Defendants is **DENIED**.

- Defendants' motion to dismiss Plaintiff's **supervisory liability** claim against Sergeants Lian and Gomez, Deputy Inspector Lorenzo, Lieutenants Bowman and Kennis, and Hand is **DENIED**.

- Defendants' motion to dismiss Plaintiff's *Monell* **liability** claim against the City is **GRANTED**.

- Defendants' motion to dismiss Plaintiff's **common law battery** claim is **GRANTED without prejudice**.

- Defendants' motion to dismiss Plaintiff's **negligence** claim against the City is **GRANTED**.

- Defendants' motion to dismiss Plaintiff's **state constitutional tort** claim is **GRANTED**.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 59. The parties are directed to submit a proposed discovery schedule on consent by **<u>Monday, August 21, 2017</u>**.

It is SO ORDERED.

Dated:    August 14, 2017
           New York, New York

Edgardo Ramos, U.S.D.J.