UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN BLEIWAS,

                              Plaintiff,

                – against –

CITY OF NEW YORK, LEON LIAN,
ALFREDO TORRES, GEORGE GOMEZ,
MIRIAM LORENZO, DENNIS BOWMAN,
CHRISTOPHER KENNIS, ESTHER BUENO,
CARL LAI, WOJCIECH LIPINSKY, PIERRE
BARBEE, JOHN HAND, and JOHN and JANE
DOE 1 through 10,

                              Defendants.

**OPINION AND ORDER**
15 Civ. 10046 (ER)

Ramos, D.J.:

     Martin Bleiwas sues the City of New York, Leon Lian, a sergeant with the New York

Police Department, and several other NYPD officers and employees for constitutional injuries

arising out of his 2014 arrest for possession of stolen property.  That arrest, as Lian and the other

defendants admit, was a mistake.  This case is about whether Lian should have known he was

making a mistake at the time of the arrest and when he signed the criminal complaint charging

Bleiwas.  Because the Court finds there is a factual dispute over whether Lian missed his

opportunity to fix his mistake, it DENIES his motion for summary judgment as to Bleiwas'

malicious prosecution claim.  The Court GRANTS summary judgment for all other claims

against Lian and the other defendants.

## I.      BACKGROUND

### A.  Lian's Investigation and Bleiwas' Arrest

     Like many police investigations, this one began with a tip.  A member of the New York

City Council told the NYPD that police radios were for sale on eBay, the online auction

platform. Defs.' Rule 56.1 Statement of Material Facts in Supp. of Summ. J. ("Defs.' SMF") ¶ 9, Doc. 130. The Department's Internal Affairs Bureau assigned this tip to one of its sergeants, Lian, in March 2015. *Id.* ¶¶ 8–10. Lian searched eBay for any live auctions involving police radios; he found two. *Id.* ¶ 11. One auction, held by a person located outside New York State, was for an operable "Saber" radio model still in use by the NYPD. Pl.'s Rule 56.1 Counter Statement ("Pl.'s CS") ¶¶ 2–3, Doc. 133;[1] Decl. of Elissa P. Fudim in Supp. of Defs.' Mot. for Summ. J. ("Fudim Decl.") Ex. B ("Lian Dep.") 37:12–13, Doc. 127. The other auction, held by Bleiwas, was for a "Motorola MX-3740 NYPD Portable Radio with Coiled Microphone," an obsolete model with serial number X9360. Defs.' SMF ¶ 12.

Concerned that an officer could be impermissibly selling part of his or her uniform, that the radios were stolen, or that someone was attempteing to impersonate an officer, Lian Dep. 33:22–35:10, Lian attempted to purchase both radios. He was unable to bid for the Saber radio because the auction had ended. Lian Dep. 38:5–9. He did place a bid on radio X9360, for sale by Bleiwas. Defs.' SMF ¶ 13. Although Lian did not win that auction, Bleiwas reached out, offering Lian an opportunity to buy X9360 in a "last chance offer." *Id.* ¶ 28. Based on his experience with eBay and similar offers, Lian suspected that Bleiwas had multiple units similar to X9360. *Id.* Between when he bid for X9360 and when he was given the last chance offer, Lian found a second radio for sale by Bleiwas, a "Motorola MX-320 Two-Way Radio NYPD." *Id.* ¶ 23. He was able to purchase this radio, with serial number U9488, immediately. *Id.* ¶ 24. Bleiwas also offered to sell Lian two additional radios engraved with "NYCTD," but Lian did not purchase these two radios. *Id.* ¶ 26. Bleiwas, as Lian discovered, was a retired officer with

[1] Bleiwas' Counter Statement includes both his responses to the defendants' statement of material facts and his own affirmative statement of the facts. References to the Counter Statement are to the latter unless otherwise noted.

the New York Department of Corrections and had last worked in the Telecommunications Unit. Fudim Decl. Ex D ("Lian DD-5") at DEF-58.

Lian reached out to the NYPD's Communication Division to continue his investigation. *Id.* ¶ 14. There, he spoke first with defendant Lt. John Hand, the Division's Integrity Control Officer. Hand told him that the Saber was listed in the NYPD's database as stolen.[2] Pl.'s CS ¶ 6. He also told Lian that he did not know what happened to older radios like the MX-3740, but that the Division's head radio mechanic, defendant Pierre Barbee, might know. Defs.' SMF ¶ 16. Lian wrote in his notes that Barbee "stated in sum and substance that the NYPD does not sell any old radios. All old NYPD radios are salvaged and mechanically shredded. They do not get re-sold or re-circulated in any way." Lian DD-5 at DEF-50. Lian recalls that Barbee also indicated that X9360 in particular had been salvaged and mechanically shredded. Lian Dep. 63:12–22. Hand later confirmed to Lian that X9360 had been recorded in NYPD's database as "salvaged" in August 1993. Defs.' SMF ¶ 22. Lian also spoke with John Buck, a member of the Communications Division since 1987. *Id.* ¶ 30. Buck told Lian that the radio he had purchased outright, U9488, was authentic and in circulation in the early 1980s to mid-1990s. *Id.* ¶ 29. Lian recalls Buck confirming that radio U9488 radio was listed as salvaged and mechanically destroyed, as well, although Lian did not record that in his notes. Lian Dep. 85:14–19.

About three weeks after beginning his investigation, in early April 2015, Lian applied for and was granted a warrant for the search of Bleiwas' home by Judge Richard Weinberg of the New York City Criminal Court. Defs.' SMF ¶ 36. Lian recounted his investigation in the warrant application and swore specifically to the following:

---

[2] Lian dropped the investigation of the Saber radio soon thereafter. Lian Dep. 45:16–18. Lian indicated that he did so because it would be difficult to extradite an out-of-state person for what he believed was a misdemeanor. *Id.* at 45:19–46:13.

- Barbee indicated to Lian that radio X9360 (the radio Lian had bid for but not purchased) was authentic and that NYPD logs indicate that the radio "was sent to be mechanically destroyed." Fudim Decl. Ex. K at DEF-244.

- Buck indicated that radio U9488 (the radio Lian purchased outright) was authentic. *Id.* at DEF-245.

- Lian expected to find "evidence of the crime[] of Criminal Possession of Stolen Property in the Fifth Degree" at Bleiwas' home in Baldwin, New York, including "items bearing NYPD markings or serial numbers, including but not limited to portable radios bearing NYPD stamps" and "evidence of proceeds from the sale of NYPD police radios and other items that are property of NYPD." *Id.* at DEF-243.

Lian arrived at Bleiwas' Long Island home two days later. Defs.' SMF ¶ 39. With him were defendants Sgt. George Gomez, Det. Carl Lai, Det. Alfredo Torres, who Bleiwas contends played key roles in the search. *Id.* Also present were defendants Deputy Inspector Miriam Lorenzo, Lt. Dennis Bowman, Lt. Christopher Kennis, Det. Esther Bueno, and Det. Wojciech Lipinsky. *Id.* When they arrived, Lian asked Bleiwas where he kept police radios; Bleiwas showed Lian to his bedroom, garage, and basement. *Id.* ¶ 42. Bleiwas had over one thousand radios in his home, including two operable radios on his nightstand. *Id.* ¶¶ 43, 46. As Lai took notes of the radios' locations and Torres took photos, Gomez and Lian interviewed Bleiwas. *Id.* ¶¶ 44, 45, 47. Bleiwas told the sergeants that he had purchased the radios at auction and might still have copies of the receipts. *Id.* ¶ 47. Bleiwas remembers Lian telling him, Bleiwas, that he could bring the documents to court. Pl.'s CS ¶ 65.

Altogether, the search team seized over 200 radios. Defs.' SMF ¶ 48. Some of those radios were in large boxes that had pieces of paper taped to the top. Pl.'s CS ¶ 71. Those slips had a list of serial numbers on them, as well as the following written in the top right: "RELINQUISHMENT of surplus, obsolete or unrepairable equipment, material or supplies, to the Department of Purchase, for sale, transfer or other disposition." *Id.* ¶ 72, Decl. of Brett H. Klein ("Klein Decl.") Ex. 11 at DEF-797, Doc. 134. The form also had separate instructions if

the equipment included automobiles.  *Id.*  A search of the NYPD's database produced in discovery indicates that all of the seized phones were listed as "salvaged."  Pl.'s CS ¶ 93.

After the search team finished, Lian arrested Bleiwas for possession of stolen property. Defs.' SMF ¶ 49.  The officers took Bleiwas to the 1st Precinct in Manhattan and released him later that day with a Desk Appearance Ticket, ordering him to appear in court on June 1.  *Id.* ¶ 50.

## B.  The Relinquishment Slips

A few days after his release, Bleiwas found the receipts he claimed to have had during the search.  *Id.* ¶ 53.  He claims that he called Lian and told him that he had found "the receipt." Fudim Decl. Ex. A ("Bleiwas Dep.") 39:5–8.  In this conversation, Bleiwas recalls Lian telling him, "[F]ax it to me and I will add it to my paperwork."  *Id.* at 39:8–12.  Bleiwas, however, testified that he never sent Lian anything.  *Id.* at 39:12–14.

Lian recalls this conversation, as well.  As he remembers it, Bleiwas called and "wanted to fax [him] the receipts."  Lian Dep. 242:1.  After the call, Lian "think[s] [Bleiwas] sent [him] some records, some receipts."  *Id.* at 53:2–3.  In his deposition, Lian characterized the transmission as "a partial receipt."  *Id.* at 242:20.  He was then shown a four-page document, marked as "Exhibit 17."  *Id.* at 246:5–7.  Lian indicated that Bleiwas faxed him a "copy of a partial" of Exhibit 17.  *Id.* at 246:15–16.

Although Exhibit 17 was not included in the moving papers of either party, the defendants provide a photo of what they claim Lian received, i.e., the "copy of a partial." Fudima Decl. Ex. W.  Exhibit W depicts several torn relinquishment slips like the ones attached to the boxes of radios seized from Bleiwas' home.  Bleiwas argues that the photos in Exhibit W are actually from the seized boxes themselves, not from anything he sent Lian.  Pl.'s CS at 13

(response to Defs.' SMF ¶ 54).  Bleiwas maintains that he sent Lian nothing at all after their phone conversation.  *See id.* at 13–15 (responses to Defs.' SMF ¶¶ 54, 55, 56, 58, 59).

Lian recalls performing some investigation after he spoke with Bleiwas to determine whether the documents he received were genuine.  Defs.' SMF ¶ 58.  In his deposition, Lian recalled that he made phone calls where he "tried to track down the receipts but [] hit a brick wall.  Nobody had any records."  Lian Dep. 242:24–243:9.  He did not indicate whom he attempted to call, but he does "remember trying to find it because no one knew what department that was.  It's a defunct agency, it doesn't exist."  *Id.* at 244:8–11.  He then remembers that he sent the relinquishment slips to the New York County District Attorney's Office.  Defs.' SMF ¶ 55.  Bleiwas disputes Lian's recollection, saying that the DA's Office did not receive the documents until Bleiwas gave them to an assistant district attorney at a June 2015 court date.  Pls.' CS ¶¶ 97, 111.  The assistant district attorney himself believes that the slips in his file came from Bleiwas, rather than Lian.  Fudim Decl. Ex. EE 90:2–5.

## C.  Subsequent Court Proceedings

The New York County District Attorney's Office formally charged Bleiwas by criminal complaint with possession of stolen property on May 19, 2015.  Defs.' SMF ¶ 64.  Lian signed the accompanying affidavit, which indicated that Barbee had told Lian that the radios Bleiwas sold were "genuine NYPD radios" and that such radios are "mechanically destroyed when they are decommissioned."  Fudim Decl. Ex. Y.

Bleiwas had two court days in June 2015.  Bleiwas made his first court appearance for arraignment on June 1.  The DA's Office offered to adjourn Bleiwas' case in contemplation of dismissal, *see* N.Y. Crim. Proc. Law § 170.55 (McKinney 2019), but Bleiwas refused.  Defs.' SMF ¶ 66.  The case was adjourned to June 24.  *Id.*

Bleiwas appeared in court that day. He claims it was on *this* day that he provided the auction receipts to the DA's Office. Pl.'s CS ¶ 111. These receipts bore the name of a Ken Rappaport and commanded that "All City identification marks on any items included in this sales order must be removed by purchaser prior to sale." Defs.' SMF ¶¶ 62, 63. That day, Bleiwas also produced copies of the relinquishment slips and a notarized letter from Rappaport indicating that Rappaport had purchased the radios at auction and sold them to Bleiwas. Pl.'s CS ¶ 111.

The assistant district attorney sought another adjournment to obtain a supporting affidavit that corroborated Lian's investigation into the procedures for decommissioning radios. Defs.' SMF ¶ 67, 68. The court granted the request and adjourned the case to September 9. *Id.*

The assistant district attorney asked Lian for help in getting a supporting affidavit that confirmed the policy of salvaging and destroying old radios. *Id.* ¶ 69. Lian approached the commanding officer of the Communications Division, Deputy Inspector John Howard, first. *Id.* ¶ 70. Lian believes he spoke to Howard on June 29, over five weeks after he signed the criminal complaint. *Id.* ¶ 74.

During this conversation Lian learned that the Communications Division had not *always* destroyed radios when they were taken out of service. Fifteen years previously, the Division had given radios to the City's Department of General Services or Department of Citywide Administrative Services, which disposed of them at auction. *Id.* ¶ 72, 73. The NYPD only began destroying radios after 2000, when old radios began appearing on eBay and the Department began to fear that they could be used by individuals attempting to impersonate police officers. *Id.* ¶ 78. Lian promptly told the prosecutor this new information. Decl. of Leon Lian ¶ 8, Doc. 129. In September, the case against Bleiwas was dismissed. Defs.' SMF ¶ 77.

### D. This Litigation

Bleiwas, as it turns out, has been a radio collector since he was a child. Pl.'s CS ¶ 8. In 1994, he purchased a large lot of radios from his friend, Ken Rappaport, who had in turn recently purchased the radios through an auction run by the New York City Department of General Services. *Id.* ¶ 9. Bleiwas resold some of the radios, which were inoperable, on eBay over time. *Id.* ¶ 10, 11.

Barbee had been mistaken when he informed Lian that all old radios were destroyed and not sold. He had joined the Communications Division in 1993, around the time Bleiwas purchased his lot, but he had limited experience with hand-held radios. *Id.* ¶ 16. Buck, though he had joined the Division in 1987, had no direct experience with the salvaging of those radios. *Id.* ¶ 42. At no time, however, did either man tell Lian the limits of their knowledge regarding the disposal of hand radios. Defs.' SMF ¶ 34.

Bleiwas brought this lawsuit three months after the dismissal of charges, alleging violations of his rights stemming from his arrest and prosecution. He named as defendants nearly every officer involved with the investigation, search, and arrest. After defendants filed their motion to dismiss, Doc. 59, the Court granted it in part, Doc. 80, and then modified the associated order after the defendants' motion for reconsideration, Docs. 84, 93. In July 2018, Bleiwas filed a Second Amended Complaint listing the following federal and state causes of action:

(1) False Arrest and Unlawful Imprisonment under 42 U.S.C. § 1983 against Lian, Hand, and Barbee. Second Amended Compl. ¶¶ 43–46, Doc. 105.

(2) Violation of Right to Fair Trial under § 1983 against Lian, Hand, and Barbee. *Id.* ¶¶ 47–51.

(3) Malicious Prosecution under § 1983 against Lian, Hand, and Barbee. *Id.* ¶¶ 52–55.

(4) Failure to Intervene under § 1983 against Lian, Torres, Gomez, Lorenzo, Bowman, Kennis, Bueno, Lai, Lipinsky, Barbee, and Hand. *Id.* ¶¶ 56–60.

(5) Supervisory Liability under § 1983 against Lian and Hand. *Id.* ¶¶ 61–63.

(6) False Arrest under the laws of the State of New York against Lian, Hand, Barbee, and the City of New York. *Id.* ¶¶ 70–76.

(7) Malicious Prosecution under the laws of the State of New York against Lian, Hand, Barbee, and the City. *Id.* ¶¶ 77–81.

(8) Negligence under the laws of the State of New York against Barbee and the City. *Id.* ¶¶ 82–85.

In October 2018, the defendants moved for summary judgment as to all claims. Doc. 110. They amended their motion the following March. Doc. 125.

## II.     STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* (internal quotation marks omitted). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

"The question of whether or not probable cause existed may be determinable as a matter

of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "If the issue of probable cause is 'predominantly factual in nature,' then it is 'properly presented to the jury.'" *Barksdale v. Colavita*, 506 F. App'x 82, 84 (2d Cir. 2012) (summary order) (quoting *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994)). Likewise, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

## III. FALSE ARREST

"[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). To establish a § 1983 claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Generally, confinement is "privileged" when there is probable cause to make an arrest. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). In other words, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted).

Probable cause to make an arrest "exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

As the Second Circuit has emphasized, "probable cause is a fluid standard that does not demand hard certainties or mechanistic inquiries; nor does it demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false." *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks omitted). "Rather, it requires only facts establishing the kind of fair probability on which a reasonable and prudent person, as opposed to a legal technician, would rely." *Id.* (internal quotation marks and brackets omitted). In determining whether probable cause existed to support an arrest, courts must consider the totality of the circumstances, including the facts available to the arresting officer both immediately before and at the time of arrest. *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015).

Even if a court concludes that an arresting officer lacked probable cause to arrest, the officer is entitled to qualified immunity if the officer establishes that "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Williams v. City of New York*, No. 17 Civ. 4391 (ER), 2018 WL 4189515, at *2 (S.D.N.Y. Aug. 31, 2018) (internal quotation marks omitted). Put differently, an officer is entitled to qualified immunity if there is "arguable probable cause," a concept that turns on whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well[-]established law." *Cerrone*

*v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (citation omitted).

## A. The Investigation

Lian argues that probable cause is based on his belief that old radios are all destroyed if properly disposed. The radios in Bleiwas' possession were not destroyed. Therefore, he argues, there is probable cause that the radios seized from Bleiwas were stolen. The Court agrees with his analysis.

Lian's chain of reasoning is similar to the matter presented to the Second Circuit in *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). In that case — a § 1983 case stemming from an arrest for possession of stolen property — a police officer observed a stop sign hanging in the plaintiff's garage. *Id.* at 364. Several days later, the officer confirmed that it was missing and presumed stolen. *Id.* at 366. Based on this information, the Second Circuit determined that he had at least arguable probable cause to arrest the plaintiff, notwithstanding the plaintiff's plausible explanations of innocence. *Id.* at 370–71. In its decision, the panel noted that, "[w]hile traffic signs are not contraband, it is commonly known that they are often stolen from roadsides, and that they are not routinely acquired by the general public." *Id.*; *see also Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988) (finding probable cause for possession of stolen property when officers observed road signs hanging in plaintiff's apartment).

The Court finds that, at the very least, Lian had arguable probable cause and may enjoy qualified immunity for his actions. Like the plaintiffs in *Krause* and *Criss*, Bleiwas had in his possession former state property that, based on Lian's information, would not be in the hands of the public unless stolen. Although Lian did not explicitly confirm that the radios were stolen, as the officer in *Krause* did with the stop sign, *see* 887 F.2d at 366, Lian did confirm that all old radios were destroyed with both Barbee and Buck, longtime employees of the NYPD's

Communication division. This information is (at least arguably) sufficient for Lian to conclude that there was probable cause to arrest Bleiwas.

But Bleiwas argues that whether Lian did in fact confirm that the radios were salvaged and mechanically destroyed is disputed and best left to a jury. On this point, Lian recalled in his deposition that both Barbee and Buck told him that the specific old radios he was investigating were destroyed. Lian Dep. 63:12–22; 110:7–16. Lian's notes of his conversation with Barbee indicate that he had been told by Barbee of NYPD's blanket destruction policy for old radios. Lian DD-5 at DEF-50. Nevertheless, Bleiwas suggests that there is a factual dispute because neither Buck nor Barbee remember the conversation. Klein Decl. Ex. 2, 24:2–11; Ex. 5 19:22–20:23.

Regardless of the state of Barbee and Buck's memories, "[no] issue of fact exists where, as here, one witness has a recollection of an event, while another actor in the same event has no recollection, one way or the other." *Creighton v. City of New York*, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *40 (S.D.N.Y. Feb. 14, 2017) (quotation marks removed); *see also, e.g.*, *Creese v. City of New York*, No. 17 Civ. 3659 (ARR) (ST), 2019 WL 3302436, at *7 (E.D.N.Y. July 23, 2019) (finding no dispute of material fact when officer failed to document detail in reports), *appeal filed*, No. 19-2502 (2d Cir. Aug. 15, 2019); *Hess v. Mid Hudson Valley Staffco LLC*, No. 16 Civ. 1166 (KMK), 2018 WL 4168976, at *15 n.21 (S.D.N.Y. Aug. 30, 2018) (finding no dispute when only one participant recalled the details of conversation), *aff'd*, No. 18-2747-CV, 2019 WL 4127329 (2d Cir. Aug. 30, 2019). Therefore, absent any affirmative evidence to the contrary, there is no genuine dispute of material fact that Buck and Barbee told Lian that the radios in question had been mechanically destroyed.

Accordingly, the Court finds that there is no genuine dispute of material fact regarding

the basis for Lian's probable cause determination going into the search of Bleiwas home. The undisputed facts support Lian's opinion that there was probable cause—or at least *arguable* probable cause sufficient to trigger Lian's qualified immunity. [3]

## B. The Search

But Lian did not arrest Bleiwas at that point. Instead, he and his team arrived at Bleiwas' home to confirm that Bleiwas did indeed possess old police radios. During the search, Lian was presented with three new pieces of information: (1) Bleiwas, who was not an active police officer, had thousands of police radios in his home, including two operable ones on his night stand; (2) Bleiwas explained the existence of the radios by saying he had purchased them at auction and had receipts to back his story up; and (3) the boxes of radios that the search team seized had relinquishment slips on them. Given that Lian had probable cause for arrest as he began executing the search warrant, the question is whether any of these three pieces of information destroyed probable cause. *Cf. Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (as amended) ("Under New York law [regarding malicious prosecution], even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." (internal quotations removed)).

"[U]nder some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jock v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003). But "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not

---

[3] Although the Court conducts its own analysis, it does note that Judge Weinberg found that Lian's reasoning was sufficient to establish probable cause for the existence of stolen property in Bleiwas' home when the judge signed the search warrant in April 2015. Bleiwas claims that this Court cannot rely on Judge Weinberg's reasoning because the search warrant contained a false statement, namely that all old radios were destroyed. But the Court finds that the evidence Lian presented to Judge Weinberg was the same that Lian himself knew. There is no evidence that Lian intentionally or recklessly fabricated evidence in front of Judge Weinberg's. *See also infra* Part V.

required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). When making his probable cause determination, however, the "officer may not disregard plainly exculpatory evidence." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

First of all, Bleiwas' claim that he had receipts for the purchase of the radios was not plainly exculpatory. Even though courts have long recognized that suspects protest their innocence, they have declined to force officers to follow up on these protests before arrest. *See, e.g.*, *Jock*, 316 F.3d at 135–36; *Ricciuti*, 124 F.3d at 128; *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). Lian was not bound to take Bleiwas' claims at face value and abstain from executing the arrest until he tracked those claims down.

Nor does the presence of the relinquishment slips materially change the probable cause calculation. Although the slips do indicate that radios inside were relinquished for possible "sale," the slips also indicate that the relinquishment could have been for disposal or other ends consistent with mechanical destruction. Indeed, the slips do not mention radios specifically; rather, they are designed for the relinquishment of many types of equipment, including vehicles. They did not immediately contradict the information the Communications division gave to Lian, and they did not provide any confirmation that the radios to which they were affixed had been sold at auction, as opposed to some "other disposition." The slips do not have a price or purchaser listed on them—only the radios' serial numbers.

Finally, Bleiwas, a man Lian knew to have been a member of the Department of Corrections' Telecommunications Unit, had thousands of radios in his home. Two were operable and on his night stand. Based on everything Lian had been told up to that point, a member of the public should not have been able to amass such a collection. The discovery of this evidence

supports Lian's final decision to arrest Bleiwas for the possession of stolen property by providing support for an inference that Bleiwas knew the radios were stolen. *See Krause*, 887 F.2d at 371 ("[Officer] was entitled to rely on the implications of the information known to him in assessing whether [plaintiff] possessed this knowledge [that the property in question was stolen]."). Far from being plainly exculpatory, they raise more questions—questions that the law did not compel Lian to answer before arrest. *See Ricciuti*, 124 F.3d at 128.

Taking into account the "facts available to [Lian] at the time of the arrest and immediately before it," *Lowth*, 82 F.3d at 569 — namely, all old police radios are supposed to have been destroyed, none are resold, and Bleiwas, a former radio repairman, possessed thousands of old police radios — the Court finds that Lian possessed at least arguable probable cause to make an arrest, granting him qualified immunity from the false arrest claim. Further, the Court finds there are no genuine disputes of material fact regarding the basis of Lian's knowledge. Therefore, the Court GRANTS the defendants' motion for summary judgment as to Bleiwas' federal false arrest claim against Lian. And, because "[t]he elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law," it GRANTS Lian's motion as to the state false arrest claim, as well. *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (internal quotations marks omitted)

## IV.  MALICIOUS PROSECUTION

Plaintiff also asserts a federal and a state law claim for malicious prosecution against Lian. As with the false arrest claim, "[t]he elements of malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). "To establish a claim for malicious prosecution under New York law, a plaintiff must

show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). Probable cause is a complete defense for claims of malicious prosecution, similar to claims of false arrest. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010). In addition to these state law elements, a plaintiff seeking relief under § 1983 must assert that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment right[]" to be free of unreasonable seizure. *Id.* (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted)).

Three of the five elements are undisputed here. Lian initiated the prosecution against Bleiwas when he signed the criminal complaint charging Bleiwas with criminal possession of stolen property. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). With the dismissal of charges, the prosecution was terminated in plaintiff's favor. And the parties do not dispute that Bleiwas' requirement to appear in court several times after his arrest was a sufficient post-arraignment liberty restraint to make this state law claim cognizable under § 1983. Furthermore, if probable cause for the prosecution was lacking, the Court may infer malice on the part of Lian. *See Boyd*, 336 F.3d at 78. Therefore, the only element in dispute is whether Lian had probable cause at the time he signed the criminal complaint.[4]

The principal dispute, and the one the Court finds is sufficiently material to send to a jury,

---

[4] Bleiwas makes a passing claim that Lian withheld evidence sometime in June. But he neither alleges in his Second Amended Complaint nor argues in his moving papers that Lian's actions after signing the complaint amounted to "play[ing] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217. The Court accordingly focuses its analysis on what Lian knew and did prior to his signing the complaint in May 2015.

regards what Lian did in the six weeks between Bleiwas' arrest and when Lian signed the criminal complaint. Bleiwas argues that the combination of him allegedly telling Lian he had the receipts and Lian's discovery of the relinquishment slips found on the seized boxes of radios should have compelled Lian to investigate further. Lian responds that he *did* conduct an investigation through his phone calls to verify the documents he had in his possession, but that he hit a "brick wall" and was not able to get an answer either way. Bleiwas maintains that he never faxed anything to Lian to verify and that, in any event, the speed with which Howard, the head of the Communications Division, pointed out that auctions *did* happen in the 1990s shows that Lian's investigation was inadequate.

"[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (as amended). Here, there is a question of fact around whether it was reasonable for Lian to cease his investigation after hitting his "brick wall" with his phone calls. In order to make that determination as a matter of law, the Court would need to know whom Lian spoke with, what they said, and, ultimately, whether their responses made it reasonable to stop the investigation there. Lian has not produced a record sufficient to set these disputes to rest. *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 35–36 (E.D.N.Y. 2015) (finding lack of record between arrest and signing of complaint supported denying motion for summary judgment in malicious prosecution proceeding).

The questions raised by the results of Lian's search buttress this conclusion. If Lian had checked the police database, all of the radios recovered would have shown up as "salvaged" and none as stolen. Therefore, based on his prior investigation, Lian had one of two conclusions to draw: either Bleiwas was a participant in a thriving black market for stolen old police radios —

with some police insider potentially misappropriating radios bound for destruction — or the initial information Lian received — that all old radios were destroyed — was suspect. In the face of this information, Lian chose to make several phone calls to unknown individuals, rather than seeking clarification from the Communications Division — clarification that Howard promptly provided when Lian eventually asked several months later.

The record does not contain enough undisputed information to determine whether Lian's failure to further investigate and discover his mistake was reasonable enough to provide a complete defense to Bleiwas' state and federal malicious prosecution claims. Therefore, the Court DENIES summary judgment as to the state and federal false malicious prosecution claims against him.

## V.  FAIR TRIAL

Finally, defendants seek dismissal of Bleiwas' federal fair trial claim. "To establish a claim of denial of the right to a fair trial, Plaintiff must plausibly plead the following elements: "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order). The Second Circuit has held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Although some courts have held that a § 1983 claim for denial of the right to a fair trial requires that a trial have actually been conducted, the Second Circuit in *Ricciuti* and other courts in this District have found otherwise. *See id.* at 127; *Schiller*

*v. City of New York*, No. 04 Civ. 10178 (RJS) (JCF), 2008 WL 200021, at \*10 (S.D.N.Y. Jan. 23, 2008) ("The limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm."); *Canario v. City of New York*, No. 05 Civ. 9343 (LBS), 2006 WL 2015651, at \*2–4 (S.D.N.Y. July 12, 2006). Thus, in cases where there are allegations that officers fabricated evidence, the key consideration is whether the fabrication resulted in a deprivation of liberty.

Bleiwas primarily contends that he was denied a fair trial because: (1) Lian included in the criminal complaint the untrue fact that someone had told him old radios were destroyed and (2) Lian withheld the relinquishment slips from the DA's Office.[5] Neither allegation withstands scrutiny. For the reasons described in Part III.A, *supra*, there is no dispute of material fact over whether Barbee confirmed to Lian that old radios are destroyed. Accordingly, there is no evidence that Lian fabricated this when he swore to the criminal complaint. *See Ricciuti*, 124 F.3d at 130 (requiring knowing fabrication of evidence to give rise to a fair trial claim).

Bleiwas' claim regarding the alleged withholding relinquishment slips fares no better. Functionally, it amounts to an accusation of a *Brady* violation for which Bleiwas seeks a civil remedy. *See Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order). When plaintiffs make such claims, they must prove three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)). In a fair-trial-claim context, the officer must have willfully suppressed

---

[5] Bleiwas also argues that Lian made two mistakes in the complaint: that it was Buck, and not Barbee, who authenticated the radios; and that the radios recovered had "NYCPD" on them rather than "NYPD." Even if they had been intentional misstatements, they are immaterial and not sufficient to give rise to a fair trial claim.

evidence.  *See Fappiano*, 640 F. App'x at 118.  "To establish prejudice, a plaintiff must show the evidence was material; i.e., whether the 'evidentiary suppression undermines confidence in the outcome of the trial.'"  *Id.* (quoting *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001)).

Even if there were a dispute of material fact over whether Lian willfully suppressed the relinquishment slips, there is no evidence that the withholding of the slips was material.  Bleiwas provided the documents to the DA's Office after his second court date, but it did not dismiss the case until September.  Bleiwas has not produced any facts that would suggest the result would have been any different if Lian had forwarded the slips to the Office earlier.

Because the Court finds no genuine dispute of material fact regarding the fair trial claim, the Court GRANTS summary judgment as to Bleiwas' federal fair trial claims against Lian.

## VI.  REMAINING CLAIMS

Because the Court finds there was probable cause for Bleiwas' April 2015 arrest, the Court also GRANTS the defendants' motions for summary judgment as to all of the claims deriving from the false arrest claim against Lian, specifically Bleiwas' failure to intervene claims and his false arrest claims against Hand and Barbee.

Additionally, in their initial moving papers, defendants produced a prima facie showing that there is no genuine dispute of material fact surrounding the following counts:  the fair trial claim against Hand and Barbee; the supervisory liability claims against Lian and Hand; the malicious prosecution claims against Hand, Barbee, and the City of New York; and the state law negligence claim against Barbee and the City.  Bleiwas does not rebut these contentions at all.  Therefore, the Court GRANTS the defendants' motion for summary judgment as to those defendants.  *See Schlenger v. Fid. Emplr. Servs. Co., LLC*, 785 F. Supp. 2d 317, 346–47 (S.D.N.Y. 2011) (finding claims not addressed in opposition to summary judgment

"abandoned").

## VII. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Both the state and federal malicious prosecution claim against Lian shall survive. All other claims against Lian and the other defendants are DISMISSED. The parties are directed to appear for a pre-trial conference on October 16, 2019 at 11:30 A.M. The Clerk of Court is respectfully directed to terminate the motions, Docs. 110, 125.

It is SO ORDERED.

Dated:     September 27, 2019
           New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.

22